McClendon, j.
| ¾An employer seeks review of an Office of Workers’ Compensation ruling that awarded its employee twenty-five weeks of compensation benefits for a scar on her right knee, as well as statutory penalties and attorney’s fees. For the following reasons, we amend the ruling to reduce the award from twenty-five weeks of compensation benefits to ten weeks of compensation benefits and .reverse the award of statutory penalties and attorney's fees.
FACTS AND PROCEDURAL HISTORY
On November 20, 2013, Ta’Shanta Du-pard, an employee of MMR Construction, *146 Inc., was involved in a work-related accident when she was struck on her right knee by a four pound hammer that fell from above.[1] Ms. Dupard was taken to Prime Occupational Medicine Clinic, where she was evaluated and diagnosed with a knee contusion and a laceration, which later developed into a permanent scar.
On February 14, 2014, Ms. Dupard filed a disputed claim for compensation, contending that a “[h]ammer fell onto [her] right knee causing pain and injury” and naming MMR as a defendant. On August 25, 2014, Ms. Dupard filed a supplemental claim, asserting that she was entitled to benefits due to “a seriously and permanently disfiguring scar on her right knee.”
Trial of this matter was held on September 23, 2014. At trial, the parties stipulated that the scar on Ms. Dupard’s knee is permanent. The parties also stipulated that at the time of the incident, Ms. Du-pard’s average weekly wage was $1,058.62, yielding a maximum compensation rate of $619.00, and that MMR tendered $3,025.00 (or approximately 5 weeks of indemnity benefits) to Ms. Dupard on September 16, 2014. As such, the only issues before the Office of Workers’ Compensation (OWC) were: (1) whether the scar was “serious” within the meaning of LSA-R.S. 23:1221, and thus compensable; (2) if so, the amount of | sbenefits due; and (3) whether Ms. Dupard was entitled to penalties and attorneys’ fees.
At trial, a photograph of the scarring along with medical records from Ms. Du-pard’s treating physician were admitted into evidence. Additionally, the OWC judge was able to view Ms. Dupard’s scarring.
Following trial, the OWC, in open court, ruled that Ms. Dupard was entitled to permanent partial disability benefits for her scarring claim and awarded her twenty-five weeks- of compensation benefits. The OWC also awarded $2,000.00 in penalties and $2,500.00 in attorney fees. On October 6, 2014, the OWC signed a written judgment reflecting its oral rulings.
MMR has appealed, assigning the following as error:
1. The [OWC] committed reversible error by ruling that Claimant’s scar on her knee, which was approximately one inch in length, was sufficiently serious and materially disfiguring so as to be compensable under La. R.S. 23:1221.
2. The [OWC] committed reversible error by ruling that Claimant’s scar on her knee, which was approximately one inch in length, merited an award of 25 weeks of compensation benefits.
3. The [OWC] committed reversible error by awarding penalties and attorney’s fees as there was no medical evidence establishing that the spar was permanent and the issue of compensability was reasonably controverted.
4. The [OWC] committed reversible error in awarding a maximum penalty of $2,000 considering that a good faith tender was made 36 days after MMR was first put on notice that Claimant was seeking PPD benefits in relation to the scar on her knee and only 43 days had passed between the date that MMR was first put on notice and the trial date.
Ms. Dupard has answered the appeal, seeking additional attorney’s fees for work performed on this appeal.
DISCUSSION
The Louisiana Workers’ Compensation Act allows recovery for employees who *147 sustain a permanent partial disability ■ in the course and scope of their employment, and provides a schedule of specific benefits (defined in terms of number of weeks of compensation) for the loss of use or amputation of specific body parts. See LSA-R.S. 23:1224(4)(a)-(o). Other permanent partial disabilities |4not - falling within that statutory schedule are covered by a more general provision, which provides, as follows:
In cases not falling within'any of the provisions already made, where the employee is seriously and permanently disfigured or suffers a permanent hearing loss solely due to a single trau-iriatic accident, or where the usefulness of the physical function of the respiratory system, gastrointestinal system, or genito-urinary system, as contained within the thoracic or abdominal cavities, is seriously and permanently impaired, compensation not to exceed sixty-six and two-thirds percent of wages for a period not to exceed one hundred weeks may be awarded. In cases where compensation is so awarded, when the disability is susceptible to percentage determination, compensation shall be established in the proportions set forth in Subparagraph (o) of this Paragraph. In cases where compensation is so awarded, when the disability is not susceptible to percentage determination, compensation ⅞⅛ is reasonable shall be established in proportion to the compensation here-inabove specifically provided in the cases of specific disability.
LSA-R.S. 23:1221(4)(p)(Emphasis added.)
Therefore, in order to be a compen-sable permanent partial disability, a scar must render the employee “seriously and permanently disfigured.” The parties do not dispute that the scar is permanent. Rather, MMR asserts that the scar was not sufficiently serious so as to be compen-sable under LSA-R.S. 23:1221(4)(p).
We note that the Louisiana Workers’ Compénsation Act does not define the term “disfigurement.” See Broadway v. Cade Wood, Inc., 583 So.2d 153, 154 (La.App. 3Cir.1991), writ denied, 588 So.2d 106 (La.1991). Although the Act does not define disfigurement, our colleagues on the third circuit have defined disfigurement as “that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen, or imperfect, or deforms in some manner[.]” Broadway, 583 So.2d at 154 (quoting Superior Mining Co. v. Industrial Cmm’n, 309 Ill. 339, 141 N.E. 165 (Ill.1923)). A serious disfigurement is a disfigurement “of such a character that it substantially detracts from the appearance of the person ..disfigured!.]” Broadway, 583 So.2d at 154-55 (quoting Dombrowski v. Fafnir Bearing Co., 148 Conn. 87, 167 A.2d 458 (Conn.Sup.Ct.Err.1961)).
The OWC is afforded great discretion in determining whether a scar is seriously and permanently disfiguring. See Creel v. Concordia Electric Co-op, 95-1914 (La.App. 3 Cir. 1/31/96), 670 So.2d 406, 412, writ denied, 96-0577 (La.4/19/96), 671 So.2d-923. Although-a photograph of ■the scar is included in the record on appeal,[2] the OWC, in making its ruling, indicated that “based upon the Court’s viewing of the keloid scar at trial -which appears worse in a courtroom viewing than the *148 photo in evidence_■ claimant sustained a scar that is a serious and permanent disfigurement.” Given the discretion afforded the OWC and its firsthand view of Ms. Dupard’s scar, we cannot conclude that the OWC abused its discretion in finding that the scar was seriously and permanently disfiguring. Therefore, assignment of error number one is without merit.
In its, second assignment of error, MMR asserts that the award is excessive and clearly erroneous. MMR notes that the scar is clearly a disability not susceptible to a percentage of disability determination. Thus, MMR avers that the reasonableness of the award should be based on comparison to the specific disabilities and corresponding compensation schedule set forth in LSA-R.S. 23:1221(4). MMR contends that, considering the statutory schedule, Ms. Dupard received more than she would have had she lost any finger, other than the thumb or index finger, and two and half times as much compensation as would be merited for the loss of a toe (other than the big toe). MMR avers that the scar did not result in any loss of functionality, such that it should be worth less than ten weeks of compensation. MMR asserts that' its tender of $3,025.00, which represents roughly five weeks of compensation, was more than adequate to. compensate Ms. Dupard for the scar. .
In opposition, Ms. Dupard contends that the award of twenty-five weeks of compensation was well- within the OWC’s discretion and should not be disturbed on appeal. Ms. Dupard urges that it is difficult to understand how reference to the scheduled awards for amputations of fingers and toes in .any way relates to the value of a disfiguring, scar. Ms. Dupard avers that while there are no recorded decisions regarding knee scars, an award of 15 percent of an employee’s- total [¡-wages for 100 weeks was made -for a wrist scar in Brooks v. Avondale Shipyards, Inc., 553 So.2d 960 (La.App. 4 Cir.1989), writ denied, 558 So.2d 1129 (La.1990). Ms. Dupard asserts that her knee scar is more significant than a wrist .scar, especially in view of the fact that a woman would ;tend to wear dresses that would expose the scar on the knee to the general public.[3] As such, Ms. Dupard concludes that the OWC did not abuse its discretion in making its award.
We note that the. compensation award for serious and permanent disfiguring injuries “shall be established in proportion to the compensation ... specifically provided in the cases of specific, disability [as set forth in LSA-R.S. 23:1221(4)(a)-(o)].” LSA-R.S. 23:1221(4)(p). Although we recognize the difficulty in applying the statutory mandate, after considering the statutory schedule, we agree with MMR that the OWC abused its discretion in awarding twenty-five weeks of permanent partial disability benefits for Ms. Dupard’s knee scar. For instance, the schedule awards twenty weeks of compensation for the loss of the middle finger, ring finger, pinky finger, or big toe. See LSA-R.S. 23:1221(4)(c), Further, for the loss of any other toe (other than the big toe), the schedule awards ten weeks of compensation. See LSA-R.S. 23:1221(4)(d). Clearly, the foregoing awards for loss of a specific digit includes both disfigurement and a loss of functionality, to varying degrees. Considering the severity of Ms. Dupard’s scar and the fact that Ms. Dupard sustained no loss of functionality, we conclude that the highest award that the OWC could have made under these circumstances was an award of ten weeks for permanent partial disability benefits. Ac- *149 eordingly, we reduce .the OWC’s award from twenty-five weeks of permanent partial disability benefits to ten weeks of permanent partial disability benefits.
In its third and fourth assignments of error, MMR contends that the OWC erred in awarding penalties and attorney’s fees arising from MMR’s failure to pay | ybenefits promptly. See LSA-R.S. 23:1201(D).[4] MMR asserts that there was no medical report from any physician that established the permanency of the scar in question. MMR avers that the “permanence” of the ‘ scar was not established until the day of trial when MMR agreed'to stipulate' thereto. Further, MMR contends that the penalties and attorney’s fees were also inappropriate- because Ms. Du-pard’s entitlement to benefits was reasonably controverted considering the minimal nature of the scar' at issue and the fact that it is located on Ms. Dupard’s knee. On appeal, Ms. Dupard concedes that the OWC erred in awarding penalties and attorney’s fees for the reasons sets forth by MMR.
Considering the foregoing, we reverse the award of penalties and attorney’s fees. Further, we find no merit in Ms. Dupard’s answer to the appeal seeking additional attorney’s fees.
CONCLUSION
For the foregoing reasons, we amend the' OWC’s October 6, 2014 judgment to reduce the award of permanent partial disability benefits from twenty-five weeks of compensation benefits to ten weeks of compensation benefits.[5] We also reverse the judgment to the extent that it awarded statutory penalties and attorney fees. The judgment is affirmed in all other respects. Additionally, we deny Ms. Dupard’s answer to the appeal. Costs of this appeal are to be split between the parties.
JUDGMENT REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED; ANSWER TO APPEAL DENIED.

. It appears that the hammer was improperly fastened to the tool belt of another worker.

. This court has been provided a black and white photocopy of the photograph that was introduced at the OWC hearing.

. Although the OWC was able to view Ms. Dupard’s scar, Ms. Dupard offered no testimony regarding how the scar has otherwise affected her.

. Louisiana Revised Statutes 23:1201(D) provides:
Installment benefits payable pursuant to R.S. 23:1221(4) shall become.due on the thirtieth day after the employer or insurer receives a medical report giving notice of the permanent partial disability on which date all such compensation then due shall be paid.

, .Based. on our calculations, ten weeks of benefits equals $6,190.00, with a credit tender due MMR of $3;025’.00. ‘ '